IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| 2 GRINGOS CHUPACABRA, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 5:25-cv-1300 |
| | § | |
| BRIAN HENK, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff 2 Gringos Chupacabra, LP ("2 Gringos") files this Original Complaint against Defendant Brian Henk ("Henk").

## I.   PARTIES

1. 2 Gringos is a Texas limited partnership company with its principal place of business in Marion, Texas.

2. Henk is an individual who resides in Comal County, Texas. Henk may be served with summons at 185 Fox Ridge, Canyon Lake, Texas 78133, or wherever he may be found.

## II.   JURISDICTION & VENUE

3. This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331, as Plaintiff asserts claims that arise under the law of the United States, namely, the federal Defend Trade Secrets Act.

4. Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## III.   BACKGROUND

5. 2 Gringos is a Texas-based company with its primary place of business in Marion, Texas. Founded in 2008, 2 Gringos began as a small, family-owned business focused on producing

high-quality seasonings and food products. Over the years, 2 Gringos has expanded its operations, developing a wide variety of proprietary sauces, rubs, marinades, and seasoning blends for all types of meat, and distributing its products throughout Texas and other states. The company has built a strong reputation for innovation, quality, and flavor relying heavily on its proprietary recipes and formulations developed through years of research, testing, and investment.

6. 2 Gringos holds numerous trade secrets, including its secret recipe formulations, ingredient combinations, cost and pricing information, vendor and customer information, and other confidential financial and business information. This information provides 2 Gringos with a significant competitive advantage in the consumer-packaged goods and food seasoning industry.

7. Henk started working at 2 Gringos in early 2020. Henk came to be employed by 2 Gringos through a former consultant Raymond Gibson. Henk was eventually responsible for the operations of 2 Gringos and, as a result, was provided access to its trade secrets and other confidential information, including the secret recipe formulations, cost information, and profit and loss information, among other things. Henk was required to maintain the confidentiality of this information during his employment. 2 Gringos expressly instructs all employees, including Henk, that only the owner, Alton Paris, and his grandson, Dylan Paris, had general access to the secret recipes, and the recipes should not be disclosed outside of the company, except as to facilitate production and under confidentiality protections.

8. In the course of his job duties, Henk was also provided limited access to the product formulations for the sole purpose of working with a supplier but with the clear expectation that he guard the formulations as 2 Gringos' most important secret. Henk also reviewed and participated in the development of an employee handbook that further instructed employees that may not improperly use or disclose 2 Gringos' confidential information or trade secrets.

9. During the course of Henk's employment, he was assigned and used a 2 Gringos email account and 2 Gringos laptop. Henk was expected to use his 2 Gringos' email account and laptop for any 2 Gringos business. In or around the fall of 2022, 2 Gringos terminated Henk's employment. Upon termination, Henk returned his company-issued laptop and should not have retained any 2 Gringos' confidential information.

10. In April 2024, Henk filed suit against 2 Gringos, seeking to enforce a purported agreement between Henk and a company titled "2 Gringos Salsa Chupacabra, LLC," in Bexar County state district court. The purported agreement was never approved by 2 Gringos or its owner, Mr. Paris. The origin of the document is unclear, but it was executed by the former consultant, Mr. Gibson.

11. 2 Gringos has since discovered that the content of Henk's 2 Gringos email account was almost entirely deleted. At this time, it is unclear if Henk deleted the contents of the account or how such data was deleted. During the litigation, 2 Gringos propounded various written discovery, which included a request for "all documents related to your employment with [2 Gringos]." Henk originally responded to the requests on November 18, 2024, without producing any documents Upon inquiries from 2 Gringos' counsel about whether Henk had any documents to produce, Henk's counsel stated that it was his "understanding that the emails and documents are on your client's server." There was no mention of Henk retaining some of 2 Gringos most confidential information.

12. Notwithstanding the prior representation, on October 3, 2025, Henk's counsel produced additional documents, which included a spreadsheet of 2 Gringos' highly confidential formulations as well as confidential financial records.

13. Because Henk returned his company laptop, the only way for Henk to still possess such information is if Henk improperly copy such information from his 2 Gringos email account or 2 Gringos laptop to a personal account or device. For example, he may have emailed this information to himself or copied it to an external storage device, such as a USB drive, without authorization. Henk

3

was not authorized to copy confidential company information outside of the company's physical or electronic premises, and he was not authorized to retain such materials after his employment ended.

14. Immediately upon receiving the documents, counsel for 2 Gringos notified Henk's counsel that the materials were highly confidential, and that Henk was not authorized to possess or retain them. 2 Gringos' counsel requested an explanation as to how and why Henk remains in possession of this information, where it has been stored, and whether it has been shared with any other person or entity. Henk's counsel asserted that the confidential documents were "not in his personal possession" while he was employed—despite the fact that Henk still possess the electronic files on a personal device or account years after his employed ended. Henk's counsel also refused to explain how Henk the electronic files came into his personal possession or whether he has shared the files with anyone.

15. 2 Gringos has no assurance that Henk has secured the confidential and proprietary materials in his possession or that he has not used or attempted to use them for an improper purpose. Henk has not provided any confirmation that the information has not been copied, shared, or disseminated to others. As a result, 2 Gringos remains exposed to the ongoing and imminent risk that its proprietary seasoning recipes, cost and pricing information, and financial data may be disclosed to competitors or otherwise made publicly available. The continued retention of this confidential information by Henk constitutes an ongoing misappropriation and poses an immediate threat of irreparable harm to 2 Gringos' business and goodwill.

## IV.   CAUSES OF ACTION

### Count 1—Violation of the Defend Trade Secrets Act of 2016

16. 2 Gringos re-alleges and incorporates the allegations as set forth in the foregoing paragraphs as if they were fully set forth herein.

17. 2 Gringos holds numerous trade secrets. Henk had access to 2 Gringos' trade secrets, including but not limited to 2 Gringos' proprietary seasoning recipes and formulations, ingredient combinations, vendor and customer information, financial information, and cost and pricing data. This information derives independent economic value to 2 Gringos. Specifically, the compilation of such information would allow a competitor to replicate and undermine 2 Gringos' business by knowing 2 Gringos' product formulations, sourcing for ingredients and materials, and pricing and profit information.

18. 2 Gringos has taken reasonable measures to maintain the confidentiality of its trade secrets, and 2 Gringos has taken measures to prevent the unauthorized disclosure or use of its trade secret information. While Henk was employed, 2 Gringos specifically instructed him that only the owner and one other employee could generally access to the company's seasoning formulas and that such formulas should be stored securely in a safe and not kept on company computers. Henk was provided limited access to work to facilitate working with suppliers with the understanding that he treats the recipes as 2 Gringos' most important secret.

19. Henk misappropriated 2 Gringos' trade secrets by acquiring 2 Gringos' trade secret information identified herein, with knowledge or reason to know that the trade secrets were acquired through improper means.

20. 2 Gringos seeks an injunction to prevent any actual or threatened misappropriation of its trade secrets.

21. Additionally, 2 Gringos request all compensatory damages suffered as a result of the misappropriation, including actual damages and any unjust enrichment.  Alternatively, 2 Gringos seek a reasonable royalty for Henk's potential unauthorized use and disclosure of 2 Gringos' trade secrets.

22. 2 Gringos requests exemplary damages to the extent Henk willfully and maliciously misappropriated 2 Gringos' trade secrets.

## V.  ATTORNEYS' FEES

23. 2 Gringos requests its attorneys' fees under 18 U.S.C. § 1836(b)(3)(D) to the extent Henk willfully and maliciously misappropriated 2 Gringos' trade secrets.

## VI.  CONDITIONS PRECEDENT

24. All conditions precedent to 2 Gringos' recovery have been performed, have occurred, or have been excused.

## VII.  JURY DEMAND

25. 2 Gringos demands a trial by jury.

## VIII.  CONCLUSION

26. 2 Gringos requests that judgment be entered in its favor and against Defendant for: (1) preliminary and permanent injunctive relief; (2) actual damages and any unjust enrichment, including actual damages, consequential damages, punitive damages, and a reasonable royalty; (3) pre-judgment and post-judgment interest, costs, and attorneys' fees; and (4) for such other relief as the Court deems just and proper.

Respectfully submitted,

DYKEMA GOSSETT PLLC

By: /s/ *Michael Twomey*
    Michael Twomey
    Texas Bar No. 24070776
    MTwomey@dykema.com
    5 Houston Center
    1401 McKinney Street, Ste. 1625
    Houston, Texas 77010
    Telephone: (713) 904-6900

    Daisy J. Ramirez
    Texas State Bar No. 24119121
    DRamirez@dykema.com
    112 E. Pecan Street, Suite 1800
    San Antonio, Texas 78205
    Telephone: (210) 554-5500

ATTORNEYS FOR PLAINTIFF

4901-6247-4351.4